UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-62111-CIV-MORENO/SELTZER

AARON DATA SYSTEMS, INC., a Florida
corporation and OZCOIN, INC., a Texas
corporation,

      Plaintiffs,

vs.

GLD INTERNATIONAL, INC., a Delaware
corporation d/b/a CRYPTOGLD; CITIGOLD
CORPORATION LIMITED, an Australian
public company organized under the laws
of the Commonwealth of Australia; JOHANNES
BREYTENBACH, individually; GREGORY
BREYTENBACH, individually; JOHN
FOLEY, individually; and MARK LYNCH,
individually,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the undersigned pursuant to the District Court's Order of Referral to Magistrate Judge Seltzer for all Pretrial Proceedings (DE 25) and Defendants' Motion to Dismiss for Forum Non Conveniens and Lack of Personal Jurisdiction (DE 12). After reviewing the parties' pleadings, memoranda of law, and supporting affidavits, and after hearing oral argument on the issue of forum non conveniens, the undersigned recommends that Defendants' Motion to Dismiss for Forum Non Conveniens (DE 12) be GRANTED; that the Complaint for Damages and Injunctive Relief (DE 1) be DISMISSED; and that Plaintiffs be instructed that any future complaint arising from the same subject matter be filed in Australia.

I.     BACKGROUND

A.     Allegations of the Complaint

Aaron Data Systems, Inc. ("ADSI") is a Florida corporation; it alleges that its principal place of business is in Florida.  OZcoin, Inc. ("OZcoin") is incorporated in Texas; it alleges that its principal place of business is in Florida.  Both Plaintiffs are internet-based companies and neither maintains a physical location (other than for mail receipt and corporate records storage) in the United States, or anywhere else.

Plaintiffs filed the instant Complaint (DE 1) in the Southern District of Florida. Plaintiffs assert claims for conversion, breach of fiduciary duty, and Deceptive and Unfair Trade Practices under Florida law, as well as for conspiracy and "aiding and abetting." They seek damages and injunctive relief against six defendants:  GLD International, Inc. ("GLD"), a Delaware corporation with its principal place of business in New York; Citigold Corp., Ltd. ("Citigold"), an Australian company with its principal place of business in Australia; Johannes Breytenbach ("J. Breytenbach"), a New Zealand citizen with his primary residence in Queensland, Australia; Gregory Breytenbach ("G. Breytenbach"), a New Zealand citizen with his primary residence in New York; John Foley ("Foley"), an Australian citizen with his primary residence in Queensland, Australia; and Mark Lynch ("Lynch"), an Australia citizen with residences in Australia and the United Arab Emirates.

Defendant Foley sat on the board of directors of both Plaintiff OZcoin and Defendant Citigold.  Defendant  J. Breytenbach was named as an officer/director/Chief Technology Officer and a member of Plaintiff OZcoin's Executive Committee (DE 22-1). Defendant G. Breytenbach served as Plaintiff OZcoin's social media manager. Defendant Lynch was the CEO of Defendant Citigold.

According to the Complaint (DE 1), ADSI's principal, Terry Aronson (who holds dual United States and Australian citizenship), was approached by Foley about ADSI creating and leading a fundraising initiative for Citigold.  Aronson and Foley were long-time family friends from Australia. (DE 22-1).  The Complaint alleges that ADSI conceived the concept of a 100% gold-backed cryptocurrency and created a licensed mobile app to build the cryptocurrency.  ADSI's cryptocurrency and blockchain applications were developed and tested by programmers in Switzerland and the United Kingdom (DE 22-1, ¶ 5).  At a meeting that took place in Australia, ADSI proposed utilizing gold assets owned by Citigold as collateral for the cryptocurrency (DE 34).   ADSI and Citigold proceeded to execute an agreement (DE 1, ¶ 46), again in Australia, pursuant to which ADSI formed an affiliate, OZcoin, to  market and promote the gold-backed cryptocurrency.  (DE 1, ¶ 47).

After obtaining a license from ADSI to use its cryptocurrency technology, OZcoin and Citigold entered into a Gold Certificates and Security Agreement (DE 1-11) that granted OZcoin a collateral security lien over 100,000 ounces of gold owned by Citigold; this gold formed the backing for OZcoin's cryptocurrency.  The gold would be purchased by OZcoin, mined by Citigold, and stored at the Perth (Australia) Mint with OZcoin holding gold certificates issued by the Perth Mint (DE 1-11).  Known as OzcoinGold ("OzGLD"), the gold-backed cryptocurrency was launched on March 10, 2017, with a promotion at the 2017 South by Southwest Conference and Festivals ("SXSW") in Austin, Texas.

In late April 2017, relations between OZcoin and Citigold began to deteriorate when Defendant Lynch, at a meeting in Australia, proposed an operating agreement that allegedly differed in substantial fashion from the parties' prior agreements.  According to Plaintiffs, matters deteriorated further when, in May 2017, Defendants Foley and J.

Breytenbach met in Australia and illegally removed Aronson as an officer of OZcoin and orchestrated an allegedly fraudulent release of OZcoin's security interest in Citigold's 100,000 ounces of gold. Simultaneously, Foley, J. Breytenbach, and Lynch "surreptitiously plotted to incorporate a separate entity to launch a cryptocurrency clone of OZcoinGold called CryptoGLD." (DE 1, ¶ 105). Defendant GLD International, Inc., was allegedly formed under Delaware law for the alleged purpose of operating CryptoGLD. (DE 1, ¶¶ 1-5, 110).

CryptoGLD was launched in June 2017, "declaring itself 'the World's First 100% Gold-Backed Cryptocurrency'" (DE 1, ¶ 112). CryptoGLD is allegedly based on the same technology as that developed by ADSI. Citigold allegedly announced that it had terminated its previous gold purchase agreement with ADSI and, instead, entered into a gold purchase agreement with GLD International. Plaintiffs contend that Foley and J. Breytenbach were still serving as officers and directors of OZcoin and/or ADSI while engaged in direct competition with OZcoin through GLD International.

    B.    <u>Defendants' Motion to Dismiss</u>

Defendants move to dismiss the Complaint on the grounds of <u>forum non conveniens</u> and lack of personal jurisdiction. "[A] district court has discretion to respond at once to a defendant's <u>forum non conveniens</u> plea, and need not take up first any other threshold objection" including "whether it has authority to adjudicate the cause (subject matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case." <u>Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.</u>, 549 U.S. 422, 425 (2007). Accordingly, this

Report and Recommendation addresses only Defendants' forum non conveniens argument.

Defendants argue that Australia is the appropriate forum because access to witnesses and documentary proof is far superior in Australia than in Florida, because the plaintiff corporations have no presence (other than incorporation) in the United States, and because foreign law governs this action.  Plaintiffs argue that Defendants do not satisfy the standard for dismissal for forum non conveniens because Plaintiffs' choice of forum is entitled to deference, because certain non-party witnesses reside in the United States or are willing to travel to the United States to testify, and because relevant documents in the custody of non-parties such as the Commonwealth Bank of Australia and the Perth Mint are actually under the "control" of at least one of the plaintiffs or defendants and, thus, are subject to production.  Plaintiffs also dispute that the choice of law issue is determinative in identifying the appropriate forum for this case.

II.   DISCUSSION

A.   Forum Non Conveniens Standards

The doctrine of forum non conveniens allows a federal court to dismiss an action if a foreign court is a more appropriate and convenient forum for adjudicating a case.  See Sinochem, 549 U.S. at 425.  To obtain dismissal based on forum non conveniens, the moving party must "establish that '(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'" Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1330 (11th Cir. 2011) (quoting Leon v. Million Air, Inc., 251 F.3d 1305, 1310-11 (11th Cir. 2001)).

5

### 1.    Adequate Alternative Forum

In evaluating Defendants' request for dismissal based on <u>forum non conveniens</u>, this Court first must consider (1) whether the alternative forum of Australia is adequate and (2) whether that forum is available.  <u>See</u> <u>Tazoe</u>, 631 F.3d at 1330.  An alternative forum is inadequate "only in rare circumstances where the remedy offered by the other forum is clearly unsatisfactory."  <u>Aldana v. Del Monte Fresh Produce N.A.</u>, 578 F.3d 1283, 1290 (11th Cir. 2009) (internal quotation marks omitted).  Such a remedy is insufficient when it is "no remedy at all."  <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 254 (1981); <u>see</u> <u>Aldana</u>, 578 F.3d at 1290.  An alternative forum is available if the foreign court can assert jurisdiction over the litigation.  <u>See</u> <u>Leon</u>, 251 F.3d at 1311.  Generally, this requirement is met "when the defendant is 'amenable to process' in the other jurisdiction."  <u>Piper Aircraft Co.</u>, 454 U.S. at 254 n.22 (quoting <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 506-07 (1947)).

Here, the parties do not dispute that Australia is an adequate forum for Plaintiffs' claims.  Nor does the Court have any reason to doubt that the courts of that nation would offer Plaintiffs an adequate remedy.  Defendant Foley, a licensed barrister in Queensland, Australia, filed an affidavit in support of the Motion to Dismiss [DE 16].  Foley opined that the Supreme Court of Queensland is a common law court of unlimited jurisdiction, with proceedings conducted in English.  He stated that he has "confidence that plaintiffs in the instant action can receive due process and a fair hearing in the Supreme Court of Queensland." (DE 16, ¶ 7).  Indeed, the Gold Certificates and Security Agreement (DE 1-11) between Citigold and OZcoin expressly provides that the "agreement is governed by the laws of New South Wales, Australia, and the parties submit to the non-exclusive jurisdiction of that state."  (DE 1-11 ¶2) (emphasis added).  Having reviewed Foley's

6

affidavit, the agreement of OZcoin to submit to the jurisdiction of the Australian courts, and the underlying law concerning forum non conveniens, the undersigned concludes that the requirement of an available, adequate alternative forum requirement is met. See Kolawole v. Sellers, 863 F.3d 1361, 1370 (11th Cir. 2017) (defendant satisfied the initial burden of establishing the availability of an adequate alternative forum through the affidavit of a Nigerian law professor who opined on the adequacy of relief available in a Nigerian forum).

## 2.    The Presumption of Deference

"When a forum is both available and adequate, courts proceed to analyze the private and public factors relevant to forum non conveniens."  Kolawole, 863 F.3d at 1371. The first inquiry is "a determination as to the proper deference to afford the plaintiff's choice of forum:  there is normally a 'strong presumption' that a plaintiff has chosen a convenient forum."  Id. (citing Leon, 251 F.3d at 1314).  The presumption is stronger when the plaintiff is a citizen of the United States, Wilson v. Island Seas Invs. Ltd., 590 F.3d 1264, 1269 (11th Cir. 2009), but weakens when the plaintiff is a foreign citizen.  King v. Cessna Aircraft Co., 562 F.3d 1374, 1382 (11th Cir. 2009) (per curiam).

In this case, Plaintiffs are two corporations that are incorporated in the State of Florida and the State of Texas, respectively.  Plaintiffs argue that their status as United States corporations grants them a strong presumption of deference.  They argue that their presence in the United States is not a mere formality and that, in fact, they are American companies, employ American citizens in Florida, and operate and have their primary business in Florida.

Defendants respond that neither corporate Plaintiff has any physical presence in the United States and that the presumption of deference does not apply where a

corporation's United States citizenship is merely a function of its place of incorporation. See U.S.O. v. Mizuho Holding Co., 547 F.3d 749 (7th Cir. 2008) (subsidiary of a Japanese company not entitled to presumption of deference even though it was incorporated in Delaware). In U.S.O., the Seventh Circuit called the plaintiff's reliance on its state of incorporation a "veritable paroxysm of formalism." Id. at 751. The court explained:

> The demands of a global economy require that American courts be amenable to permitting litigation that can be handled much more efficiently in foreign forums be sent to those forums. . . The fact that a Japanese company has a Delaware corporate certificate but not offices or personnel [] in the United States should not make it feel more at home litigating in Chicago than in Tokyo.

Id.

The undersigned agrees with the analysis by the Seventh Circuit and concludes that the deference afforded to Plaintiffs' choice of forum is minimal, at best.   The plaintiff corporations were indeed incorporated in the United States and maintain a minimal presence in the United States.   However, Plaintiffs have not presented evidence of measurable corporate activity in Florida, other than receipt of mail, storage of records, and the presence of two briefly tenured directors of OZcoin.[1] They are essentially companies that exist on the internet – in a sense, in "the cloud."   Plaintiffs have no storefront in this District, nor is there any evidence of their having servers in this District (or even, the United States), or employees that maintain their websites and databases.   Aside from maintaining their records and receiving their mail in this District, these corporations have no more

---

[1] Ira Carlin and Terry Bresnick are United States citizens who were associated with OZcoin for approximately two and one-half months, from February 17, 2017, when they were appointed to OZcoin's Board, to May 5, 2017, when they resigned.

presence in this District than they do anywhere else in the world that receives free and open internet transmission.  As the Seventh Circuit noted in U.S.O., Plaintiffs' lack of personnel or offices in this District should not imbue its choice to litigate in this forum with any measurable level of deference.

Furthermore, the very nature of this case militates against according Plaintiff's forum choice much, if any, deference.  OZcoin was incorporated to implement a business deal that had minimal involvement in the United States.  Indeed, in the end, this was a deal centered around Australian gold.  And, as concerns the instant motion, the case involves Australian witnesses who can testify to the negotiations and transactions involving that gold and Australian documents that memorialize those transactions.  ADSI developed the cryptocurrency program at the behest of and for the fundraising needs of an Australian company.  On the facts as alleged in the Complaint and in the various declarations that have been filed, the undersigned concludes that the place of incorporation of the Plaintiff corporations  affords, at best, a weakened presumption of deference to Plaintiffs' choice of forum.

Yet, even if such a presumption were to be granted,  the Court must still consider the private and public factors that ultimately determine the propriety of Plaintiffs' chosen forum.  The fact that the Plaintiffs are American corporations certainly does not preclude dismissal for forum non conveniens.  See Rosen v. Execujet Services LLC, 241 F. Supp.3d 1303, 1314 (S.D. Fla. 2017) (Marra, J.) (private factors supporting dismissal for forum non conveniens outweighed deference owed to United States plaintiff's choice of forum).

### 3.    Private Interest Factors

Although the list is not exhaustive, "the private interests courts may weigh include the 'ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing[ ] witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" Kolawole, 863 F.3d at 1371-72 (quoting Leon, 251 F.3d at 1314) (ellipses in original) (internal quotation marks and citations omitted)).  After considering the private factors raised by the respective parties, the undersigned concludes that trial of this case would be easier, more expeditious, and less expensive in Queensland, Australia.

### a.    Witnesses

First, most of the relevant witnesses reside outside of the United States, mostly in Australia.  This Court, therefore, is without the authority to compel their attendance. Furthermore, even if this Court possessed such authority, the expense of bringing the witnesses to this District would be very high.  Defendants and key witnesses Johannes Breytenbach, John Foley, and Mark Lynch reside in Queensland, Australia.  And although Defendant Gregory Breytenbach is temporarily residing in New York State, he too is an Australian citizen with strong ties to that nation.

So too, critical non-party witnesses reside in Australia.  Solicitor Philip Walton who resides in Syndey, New South Wales, Australia, has unique knowledge about the creation and release of the liens described in the Complaint; he also holds critical key original documents relating to the creation of and release of the security interests in the Australian gold.  Solicitor Walton can be served with process in New South Wales to appear in Queensland, but he cannot be compelled to appear in Miami, Florida.  Although Plaintiffs

proffer that they have secured his agreement to appear and have submitted a Declaration from Walton to that effect, the Court cannot rely on that Declaration to compel his appearance should he change his mind or should other matters arise precluding his travel from Australia to Florida.

Nial Nand is another critical witness who lives in Australia. Nand is the corporate secretary of Citigold who Plaintiffs allege signed fraudulent releases of OZcoin's security interests in the gold. Plaintiffs argue that because Nand is Citigold employee, Citigold can produce him for testimony. Nand, however, cannot be subjected to compulsory process by this Court. Plaintiffs' suggestion that critical witnesses would be willing to travel to Florida from Australia for testimony and trial is not sufficient; these witnesses cannot be compelled to attend.

Plaintiffs argue that the Florida residence of several witnesses – Terry Aronson, Ira Carlin, Terry Bresnick, Kirk Newsome, and Robert Dias -- militate in favor of their chosen forum and against litigating the case in Australia. The undersigned is not convinced that these witnesses' presence in Florida warrants that the case be tried here. First, Terry Aronson holds Australian citizenship and admits that he "travels extensively" to Australia (DE 22-1, ¶ 2). Second, Carlin and Bresnick were associated with OZcoin for only two and one-half months, from February 17, 2017, when they were appointed to OZcoin's Board, to May 5, 2017, when they resigned. And, Plaintiffs have failed to proffer any unique testimony that would be offered by either Bresnick or Carlin.

Likewise, Plaintiffs have not attributed any substantive knowledge to Kirk Newsome that would qualify him as a critical witness. According to Aronson (DE 31-4), Newsome is a Texas-based attorney who was hired merely to prepare and file articles of incorporation

for OZcoin.  He helped Aaronson obtain certified copies of OZcoin's incorporation papers

to send to the Perth Mint.  Importantly, Plaintiffs proffer no knowledge of or participation

by Newsome in the negotiations between the parties or the terms of the agreements

between the parties beyond what he may have learned in his capacity as an attorney for

OZcoin.  In considering a <u>forum non conveniens</u> motion, courts cannot presume that a

witness's testimony is critical, absent an explanation of its  significance.  <u>Rosen</u>, 241 F.

Supp.3d at 1310-11, n. 6 & 7.  Plaintiffs have failed to provide any explanation that would

support  the  conclusion  that  Kirk  Newsome  is  a  critical  witness.  <u>See</u> <u>Online Payment</u>

<u>Solutions Inc. v. Svenska Handelsbanken AB</u>, 638 F. Supp.2d 375, 390 (S.D.N.Y. 2009)

(overstated  importance  of  witness'  testimony  adds  no  weight  to  private  interest  factor

analysis).

　　　　Finally, it appears that Robert Dias, a retired IRS executive, is being proffered as

a proposed expert on "good corporate governance."  He has also prepared tax returns for

ADSI and OZcoin.  The Declaration (DE 22-2) submitted by Dias to the Court contains

multiple levels of hearsay information.  To the extent that he would testify as an expert on

"good corporate governance," the undersigned notes that Plaintiffs have the option of

either bringing him to Australia or, alternatively, hiring an expert in Australia. There is no

showing that Dias is a critical witness whose presence in the United States would warrant

litigating this Australian dispute in this District.

<u>b.</u>　　　Documents

　　　　Beyond the presence of the critical witnesses in Australia, Defendants argue that

much  of  the  documentary  evidence  required  for  this  case  is  held  by  non-parties  in

Australia, such as the Walton Pitcher firm, the Commonwealth Bank of Australia, and the

12

Perth Mint.  Documents from these entities are clearly beyond compulsory process from this Court.  Plaintiffs' assertion that these entities are "technologically modern entities capable of easily providing the relevant documents" is beside the point; these entities cannot be compelled by this Court to produce the relevant documents.  Furthermore, Plaintiffs have not shown that any party to this action has a legal right to obtain documents from these non-parties.  "Under Fed.R.Civ.P. 34, control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand." <u>Searock v. Stripling</u>, 736 F.2d 650, 653 (11th Cir. 1984).

Plaintiffs argue that the case should remain in this District because they may need to obtain the parties' email and website data through certain internet service providers (Google, Inc. and GoDaddy.com). This argument amounts to no more than speculation about both the need for and the ability to subpoena private account information from these ISPs and, therefore, is not persuasive.[2]

Finally, Plaintiffs note that Terry Aronson maintains their corporate records in the United States, and, therefore, the case should be tried here.  However, there is no issue of "control" or "custody" of the corporate Plaintiffs' records. Given Aronson's role as an

---

[2] In their post-hearing memorandum [DE 42] Defendants note that Google, Inc. maintains a presence in Sydney, Australia.  Consequently, an Australian court can exert compulsory process over Google and a subpoena can be served in Sydney.  Furthermore, Defendants note that the procedure for obtaining documents  via Australia from Google's home headquarters in the United States is much less cumbersome than in the United States, because requests from Australia are not subject to the limitations imposed by the United States Stored Communications Act, 18 U.S.C. § 2701 <u>et</u> <u>seq.</u>

officer of the Plaintiff corporations, those records can readily and easily be digitally transmitted to Australia.

c.     <u>Attorneys' Fees</u>

Plaintiffs argue that Australian law does not permit contingent fee arrangements between attorneys and clients and, therefore, the financial burden to Plaintiffs in paying their attorneys should be considered as a private interest factor. (DE 31).  However, the Eleventh Circuit has recognized that argument as "particularly weak," and noted that an alternative forum's lack of contingency fee arrangements or even trials by jury "should not significantly influence the <u>forum non conveniens</u> determination. . . ."  <u>Magnin v. Teledyne Continental Motors</u>, 91 F.3d 1424, 1430 (11th Cir. 1996) (affirming a dismissal on grounds of <u>forum non conveniens</u> despite unavailability of contingency fees in France, the alternative forum).

d.     <u>Summary</u>

In sum, this is a case about an agreement to use Australian gold as collateral for a cryptocurrency that was offered for sale via the internet.  The private interests in this case – the production and availability of witnesses and documentary evidence located in Australia, and the length and expense of travel to the United States – militate in favor of trying the matter in Australia.  These private interests outweigh any level of deference that might be accorded Plaintiffs' choice of forum.  <u>See</u> <u>Rosen</u>, 241 F. Supp.3d at 1314 ("Therefore, the Court concludes that the unfairness and undue burden to Defendants of trying the case in this District strongly outweigh Plaintiff's choice of a United States forum.").

### 4.   Public Interest Factors

Notwithstanding that the private interest factors favor dismissing this action, the Court must still consider the public interest factors.   SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1100 n.5 (11th Cir. 2004).  The Eleventh Circuit has stated:

> [a] court that rules on a motion to dismiss based on forum non conveniens must consider the following 'public factors,' which pertain to the relative interests of the two fora:   [T]he administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Tazoe v. Airbus S.A.S., 631 F.3d at 1333 (quoting Piper Aircraft, 454 U.S. at 241 n. 6) (internal quotations omitted).

The undersigned recognizes "that while this District has one of the busiest dockets in the United States, the court congestion factor is afforded little or no weight in the forum non conveniens analysis."  Rosen, 241 F. Supp.3d at 1315 (citing Karl v. Starwood Hotels & Resorts Worldwide, Inc., 2014 WL 11906608, at *6 (S.D. Fla. Feb. 21, 2014).

As set forth in the discussion of the private factors, this is not a localized controversy.  This case involves an agreement to market a cryptocurrency secured by gold that was mined, sold, and stored in Australia by an Australian company through an Australian mint.  The majority of the actors in this case are Australian or have strong ties to Australia.  The central documents were drafted and are stored in Australia.  And most of the critical meetings occurred in Australia.  Indeed, the entire transaction that forms the

basis of the Complaint developed from a long-standing relationship between two Australian citizens.  The public factor of having a localized controversy "decided at home" is simply inapplicable.

The next public factor, the avoidance of unnecessary problems in conflict of laws, weighs in favor of trying this case in Australia.  In a diversity case, a federal court applies the choice of law rules of the forum state.  Trumpet Vine Investments v. Union Capital Partners, 92 F.3d 1110, 1115 (11th Cir. 1996).  This Court, therefore, must make a separate determination on choice of law for each cause of action.  Id.

The first two causes of action are for breach of fiduciary duty by Foley and J. Breytenbach, for, inter alia, their involvement in developing and acting on behalf of GLD International and Citigold while they were on the board of OZcoin.  Count 3 asserts a claim of aiding and abetting a breach of fiduciary duty against Defendants Lynch and Citigold. "Florida resolves conflict-of-laws questions according to the 'most significant relationship' test outlined in the Restatement (Second) of Conflict of Laws."  Grupo Televisa v. Telemundo Communications, 485 F.3d 1233, 1240 (11th Cir. 2007) (citation omitted).  The parties agree that the Restatement (Second) of Conflict of Laws § 309, commonly known as the "internal affairs doctrine" provides guidance:

> The local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the parties and the transaction, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 309 (1971).  See also Mukamal v. Bakes, 3789 Fed. Appx. 890, 896-97 (11th Cir. 2010) (applying § 309 to a breach of fiduciary claim).  Section 145 of the Restatement (Second) of Conflict of Laws provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.
>
> Section 145 advises that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue."

Grupo Televisa, 485 F.3d at 1240.

Plaintiffs argue that because OZcoin is incorporated in the state of Texas, this Court must apply Texas law to the breach of fiduciary duty claims.  The undersigned disagrees, for to do so would be to elevate form over substance.  On the whole, the conduct giving rise to the alleged injury in this case took place in Queensland, Australia, involved Australian gold, Australian actors, Australian documents, and in most other pertinent respects was centered in Australia.  The only involvement that Texas has in this case is that OZcoin is incorporated there and the marketing of OzGLD began there.  By contrast,

17

the acts that gave rise to the very formation of OZcoin, as well as the alleged breach of fiduciary duty, occurred in Australia.  Accordingly, the undersigned concludes that the State of Queensland, Australia, has a more significant relationship with the torts alleged in Counts 1, 2, and 3, and that the law of Queensland, not Texas, should govern those counts.

Counts 4, 5, and 6 of the Complaint allege conversion and aiding and abetting conversion.  Section 147 of the Restatement addresses conversion claims and states that "the local law of the state where the injury occurred determines the rights and liabilities of the parties . . . unless some other state has a more significant relationship . . ."  Counts 4 and 5 allege that Defendant Citigold converted property belonging to OZcoin by causing the liens on the Australian gold to be released.  Although OZcoin claims that it was injured by these actions in the United States, Texas has a minimal relationship to the issues in these counts.  Counts 4 and 5 pertain to conversion in Australia of property in Australia and of liens that were recorded and released under Australian law.  The state with the most significant relationship to the events alleged in Counts 4 and 5 is in Australia, either Queensland State or New South Wales State.

Count 6 is also a conversion claim, in which Plaintiffs allege that Defendant J. Breytenbach converted a "hard wallet device" allegedly belonging to OZcoin, to his own use.  The hard wallet in question is in Australia (DE 15).  Thus the property allegedly converted, and the alleged act of conversion, occurred in Australia.  For these reasons, and those already discussed, Queensland, Australia has a greater relationship with the issues in Count 6 than does Florida.  Therefore, the law of Queensland, Australia, applies to Count 6.

Counts 7 and 8 allege deceptive and unfair trade practices, and conspiracy to commit the same, under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 et seq.  Count 10 seeks injunctive relief under FDUTPA.  However, a review of the Complaint establishes that FDUTPA would have no application to the events and agreements alleged in the Complaint, as the alleged wrongful acts occurred in Australia.  Florida courts have held that FDUTPA does not apply to actions that occurred outside of Florida.  Stein v. Marquis Yachts, LLC, No. 14-24756-CIV, 2015 WL 1288146, at *6 (S.D. Fla. Mar. 20, 2015) (citing Millennium Communications & Fulfillment, Inc. v. Office of Attorney General, 761 So.2d 1256, 1262 (Fla. 3d DCA 2000); Coastal Physician Services of Broward County, Inc. v. Ortiz, 764 So.2d 7, 8 (Fla. 4th DCA 1999)).  Given that these counts are unlikely to survive even if the case were to remain in this District, the undersigned concludes that the choice of law is not material to the forum non conveniens analysis.

Finally, in Count 9, ADSI seeks a preliminary injunction against Citigold, an Australian company.  According to the Complaint, Citigold agreed to participate in pre-suit mediation or other agreed upon alternative dispute resolution in any disputes with ADSI over the OZcoin Agreement (DE 1-9).   ADSI seeks to enjoin Citigold from taking any action with respect to the development, marketing, or sale of any precious-metal-backed cryptocurrency or from otherwise implementing any portion of the business plan developed by Plaintiffs, as referenced in the OZcoin Agreement.   Given that the OZcoin agreement is, by its terms, governed by Texas law, the undersigned concludes that, at best, the choice of law issue on Count 9 is not material to the forum non conveniens analysis.  To the contrary, issues of comity and affording the Australian courts the opportunity to regulate

19

the behavior of an Australian corporation, weigh in favor of dismissal on the ground of forum non conveniens.  See Ford v. Brown, 319 F.3d 1302, 1310 (11th Cir. 2003) (international comity principles favor allowing foreign nations to regulate the conduct of their own citizens).

III.     CONCLUSION

For the foregoing reasons, the undersigned respectfully RECOMMENDS that Defendants' Motion to Dismiss for Forum Non Conveniens (DE 12) be GRANTED; that the Complaint for Damages and Injunctive Relief (DE 1) be DISMISSED; and that Plaintiffs be instructed that any future complaint arising from the same subject matter be filed in Australia.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers, Fort Lauderdale, Florida, this 23rd day of March 2018.

BARRY S. SELTZER
United States Magistrate Judge

Copies furnished via CM/ECF to:
Hon. Federico A. Moreno
Counsel of record via CM/ECF